

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL BITSOFF | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-98-CV-1262-BD |
| | § | |
| CITY OF DALLAS | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant City of Dallas has moved for summary judgment in this civil rights case. For the reasons stated herein, the motion is granted.

I.

Plaintiff Michael Bitsoff was employed as the Marketing and Promotions Manager and Public Service Director for WRR-FM, a radio station owned and operated by the City of Dallas. His immediate supervisor was general sales manager Doyle Peterson, who in turn reported to station manager Greg Davis. (Def. App. at 4, 32, 42).

The relationship between plaintiff and Davis began to deteriorate in June 1997. Plaintiff alleges that Davis "engaged in a pattern of abusive and threatening treatment . . . on almost a daily basis. Such conduct has consisted of verbal abuse and physically threatening and intimidating conduct." (Def. App. at 4). Plaintiff complained about Davis's management style to David Jakaboski, a Human Resource Analyst for the City of Dallas. He also reported numerous acts of misconduct in violation of City policy. For example, plaintiff told Jakaboski that Davis: (1) demanded special services from vendors and clients; (2) negotiated deals that violated pre-existing

contracts or benefitted him personally; and (3) ordered plaintiff to falsify a mileage report on one occasion. (Plf. App. at 26-27, 44a-44b).

Jakaboski received other complaints regarding Davis's management style and referred them to Frank Poe, Director of Event Services for the City of Dallas. On July 10, 1997, Poe met with plaintiff and three other station employees to discuss their concerns. The employees presented Poe with a detailed list of Davis's shortcomings as a supervisor, including "[r]anting and raving for hours on end during . . . management meetings" and "[h]is proclivity to micro-manage his subordinates." (Def. App. at 28).

Plaintiff alleges that Davis and other WRR managers retaliated against him following this meeting with Poe. He states that Peterson and business manager Drew Corn interrogated him and other employees and pressured them to withdraw their complaints. At a meeting on July 21, 1997, Corn expressed his firm support for Davis and told plaintiff he could no longer work with him. Davis accused plaintiff of insubordination by going to Poe. He then said, "My management style is off limits and not open to discussion. . . . You know, maybe it's time for you to make a change in your employment. Maybe you would be better off somewhere else." (Plf. App. at 23). Davis reiterated this statement in a subsequent meeting. He told plaintiff that any further meetings with Poe on the subject of his management style would be regarded as insubordination and result in severe consequences for the parties involved. (Plf. App. at 24).

Shortly thereafter, plaintiff's job title was changed to Marketing and Promotions Representative. (Plf. App. at 21-24). He was later removed from live promotional drawings and banned from management meetings. (Plf. App. at 26-27, 39). In April 1998, plaintiff was reprimanded for failure to perform his duties at the Dallas Auto Show the previous month. Plaintiff contends that this reprimand and other complaints regarding his work were unwarranted.

He explains that the constant harassment and abuse by his supervisors exacerbated a pre-existing medical condition, which caused him to be bed-ridden during a critical stage of preparations for the auto show.[1]

Plaintiff was on medical leave from April 19, 1998 until June 19, 1998. He was diagnosed with job-related stress, which "is made considerably worse by the management techniques of the station manager, Mr. Greg Davis." (Plf. App. at 67). Plaintiff asked to be reassigned to another department based on the advice of his doctor. When the City failed to honor this request, plaintiff submitted his resignation on June 28, 1998. (Plf. App. at 68).

Plaintiff filed this civil rights action against the City of Dallas just prior to his resignation. He alleges that he was retaliated against for reporting wrongdoings involving Davis to City officials in violation of his rights under the First and Fourteenth Amendments to the United States Constitution. Defendant has filed a motion for summary judgment as to all claims and causes of action. The parties have briefed the issues and this matter is ripe for determination.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 131 (5th Cir.), *cert. denied*, 113 S.Ct. 136 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*,

---

[1] Plaintiff suffers from chronic fibromyalgia, a condition marked by pain in the fibromuscular tissue. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 628, 1085 (28th ed. 1993).

477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman*, 933 F.2d 1277, 1281 (5th Cir. 1991).

A movant who does not have the burden of proof at trial must point to the absence of a genuine fact issue. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The non-movant may satisfy this burden by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993); *Reid v. State Farm Mutual Automobile Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986). However, conclusory statements and testimony based on conjecture or subjective belief are not competent summary judgment evidence. *Topalian*, 945 F.2d at 1131.

### III.

Defendant has filed a motion to strike plaintiff's summary judgment evidence. Most of this evidence is not necessary to the disposition of the pending motion. Therefore, the objections set forth in paragraphs A, C, D-1, D-2, E, F, G & H of the motion to strike are denied as moot.[2]

### A.

Defendant objects to a letter from Dr. William H. Tedford, Jr. because it does not disclose facts which support his medical opinion and contains hearsay. (Plf. App. at 67; Def. Motion to Strike ¶ D-3). These objections are overruled. First, an expert is allowed to state his opinion

---

[2] Defendant has misnumbered several paragraphs in its motion to strike. Three of the paragraphs on pages 13 & 14 begin with the letter designation "D." The Court has renumbered these paragraphs as D-1, D-2 & D-3.

without first disclosing the underlying facts. *See* FED. R. EVID. 705. Second, the Court has not relied on any hearsay statements contained in the letter. This evidence is cited only to underscore that plaintiff requested a transfer to another department and resigned when defendant failed to honor that request.

B.

Defendant also argues that plaintiff cannot use his own interrogatory answers as summary judgment evidence. (Plf. App. at 17-45; Def. Motion to Strike ¶ B). This is the rule in state court. *See Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 86 (Tex. App.--San Antonio 1997, review denied). However, no similar prohibition exists in federal court. *See Duff v. Lobdell-Emery Manufacturing Co.*, 926 F.Supp. 799, 803 (N.D. Ind. 1996). Federal practice allows a party to rely on its own interrogatory answers so long as the other requirements of Rule 56 are met. *Id.* at 802-03, *citing* C. WRIGHT & A. MILLER, 10A FEDERAL PRACTICE AND PROCEDURE § 2722 at 51-52 (1983). The interrogatory answers are made on personal knowledge and verified under oath. Therefore, they are competent summary judgment evidence. *See Pender v. United States*, 1995 WL 358822 at *4 (N.D. Ind. May 26, 1995). This objection is overruled.

IV.

Plaintiff alleges that defendant retaliated against him after he complained to Frank Poe about Greg Davis's management style and other wrongdoings. This retaliation consisted of threats, verbal abuse, and intimidation which resulted in his constructive discharge from employment. Plaintiff maintains that the actions of defendant violated his right to free speech and to seek redress of his grievances under the First Amendment. He further contends that defendant arbitrarily and capriciously deprived him of a property interest in his job in violation of his right

to substantive due process under the Fourteenth Amendment.[3] Defendant argues that plaintiff cannot prove an underlying constitutional violation and, in any event, there is no basis for municipal liability under 42 U.S.C. § 1983.

A.

A governmental entity may not retaliate against a public employee for exercising his constitutional right to freedom of expression. *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *Wallace v. Texas Tech University*, 80 F.3d 1042, 1050 (5th Cir. 1996). However, there are limitations on a public employee's right to free speech in the workplace. *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Fifth Circuit has developed a three-part test in First Amendment retaliation cases brought by public employees. The employee must establish that: (1) the speech involves a matter of public concern; (2) the employee's interest in commenting on the matter outweighs the employer's interest in promoting efficiency; and (3) the exercise of free speech was a substantial or motivating factor in the adverse employment action. *See Denton v. Morgan*, 136 F.3d 1038, 1042 n.2 (5th Cir 1998), citing *Thompson v. City of Starkville, Mississippi*, 901 F.2d 456, 460 (5th Cir. 1990). An adverse finding at any stage of this test is conclusive and terminates the analysis. *See Coughlin v. Lee*, 946 F.2d 1152, 1156-57 (5th Cir. 1991).

1.

The Court must first determine whether plaintiff's speech involved a matter of public concern. This is a question of law. *See Connick v. Myers*, 461 U.S. 138, 148 n.7, 103 S.Ct.

---

[3] The complaint also alleges a violation of the equal protection clause. (Def. App. at 8). However, plaintiff abandoned this claim in his response. (Plf. Brief at 2 n.4). *See also Sharp v. City of Houston*, 960 F.Supp. 1164, 1177-78 (S.D. Tex. 1997) ("[N]o established right exists under the equal protection clause to be free from retaliation.").

1684, 1690 n.7, 75 L.Ed.2d 708 (1983); *Schultea v. Wood*, 27 F.3d 1112, 1119 (5th Cir. 1994), *aff'd in relevant part*, 47 F.3d 1427 (5th Cir. 1995). Speech involves a matter of public concern when it is made primarily in the speaker's role as a citizen rather than as an employee addressing only matters of personal interest. *Connick*, 103 S.Ct. at 1690-91 ("[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs."); *Schultea*, 27 F.3d at 1119. *But see Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998), *petition for cert. filed*, 67 U.S.L.W. 3505 (February 4, 1999) (No. 98-1266) ("The fact that an employee's speech contains an element of personal interest is not fatal, however."). The primary motivation of the speaker is determined by the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 103 S.Ct. at 1690.

It is clear that plaintiff's statements about Davis's autocratic management style were not matters of public concern. These complaints focused on Davis's abusive and hostile conduct toward plaintiff and other employees. Plaintiff told City officials that Davis was a "boss" not a "leader," threw temper tantrums, and created a hostile work environment for his subordinates. (Def. App. at 25-28; Plf. App. at 24-1). He felt that Davis had a "proclivity to micro-manage [his employees], thereby demonstrating an extreme mistrust in our abilities to fulfill the targeted goals and objectives of our respective disciplines." (Plf. App. at 23). Plaintiff reported his concerns to Jakaboski over a ten-month period and received "specialized information regarding various interpretations of rules and procedures outlined by the City of Dallas Personnel Rules . . . insofar as they pertained to my rights as a City employee." (Plf. App. at 18). The content of these remarks shows that plaintiff was primarily motivated by personal interest in speaking out against

his supervisor.[4]

Nor do the form and context of plaintiff's statements compel a different conclusion. Plaintiff's criticism of Davis' management style did not involve a larger issue of political or social importance to the community. *See Caro v. City of Dallas*, 17 F.Supp.2d 618, 631 (N.D. Tex. 1998) (employee's dissatisfaction with actions of superior did not involve matters of public concern). His grievances were made internally and did not arise in the context of any ongoing public debate about employee relations at WRR. *See Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121, 125 (5th Cir. 1991); *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir. 1991).

The Court finds that these statements were not of public concern and provide no basis for a retaliation claim under the First Amendment. However, plaintiff also reported various acts of misconduct involving Davis. He complained that Davis: (1) "strong armed" various non-profit organizations to provide him with free tickets to their events; (2) tried to upgrade a bartered coach ticket for first class travel; (3) obtained a cellular phone from a vendor for his personal use; and (4) ordered plaintiff to falsify a mileage report. (Plf. App. at 4, 22, 26-27, 44a-44b). These allegations implicate the fiscal mismanagement of a publicly funded entity. As such, they involve matters of public concern. *See Brown v. Texas A & M University*, 804 F.2d 327, 337 (5th Cir. 1986) ("It cannot be gainsaid that in our society . . . an expression relating to possible financial improprieties by a fellow public servant is a matter of public concern."). The Court must therefore address the other two prongs of the test with respect to these statements.

---

[4] The fact that other employees voiced similar complaints about Davis does not change this result. Those statements were also motivated by personal interest. For example, Jim Rhodes told Frank Poe that Davis complained about his sloppy office and made "frivolous requests for building modifications, bids and excessive paperwork." (Plf. App. at 24-1). This clearly relates to a private dispute rather than a matter of public concern.

2.

The second inquiry is whether the employee's interest in commenting on an issue is outweighed by "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick*, 103 S.Ct. at 1692. The Court will pretermit consideration of this issue because plaintiff cannot prove that the exercise of his protected speech motivated the retaliatory employment action. *See Wallace*, 80 F.3d at 1050.

3.

Plaintiff alleges that he was subjected to threats, verbal abuse, and intimidation following his meetings with David Jakaboski and Frank Poe. This constant harassment exacerbated a pre-existing medical condition which eventually forced him to resign from employment. However, nothing in the record suggests that this retaliation was motivated by plaintiff's complaints about Davis's fiscal practices or improper dealings with vendors. Indeed, there is no evidence that Davis or any of the other managers who harassed plaintiff even knew that he reported these misdeeds to City officials.[5] The only evidence before the Court suggests that any retaliation was motivated by complaints about Davis's management style. As previously discussed, those complaints do not constitute protected speech.

In sum, plaintiff has presented no evidence showing that his protected speech motivated an adverse employment action against him. Defendant is entitled to summary judgment on the

---

[5] Plaintiff points out that he confronted Davis regarding a barter-cash arrangement for airline services that allegedly violated an existing agreement with American Airlines. He alleges that "[a] short time later, Davis announced . . . that he was removing me from the monthly morning promotional drawings that had become so popular with WRR listeners." (Plf. App. at 26). This is not the type of "adverse employment action" sufficient to establish a First Amendment violation. *Pierce v. Texas Department of Criminal Justice, Institutional Division*, 37 F.3d 1146, 1149 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1957 (1995) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."). Moreover, there is no evidence that this particular episode led to any harassment which plaintiff claims resulted in his constructive discharge.

First Amendment retaliation claim.

### B.

Plaintiff also asserts a substantive due process claim under the Fourteenth Amendment. A public employer may not act in an arbitrary and capricious manner to deprive an employee of a property interest in his job. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993); *Honore v. Douglas*, 833 F.2d 565, 568 (5th Cir. 1987). However, the failure to prove a First Amendment claim is fatal to a substantive due process claim when the plaintiff alleges that he was discharged for exercising his right to free speech. *Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995); *Thompson v. Bass*, 616 F.2d 1259, 1268 (5th Cir.), *cert. denied*, 101 S.Ct. 399 (1980).

Such is the case here. Plaintiff's substantive due process claim is "based primarily on" the factual allegations underlying his First Amendment claim. *See Thompson*, 616 F.2d at 1268. The arbitrary and capricious actions of which he complains were allegedly motivated by speech that enjoys no constitutional protection. Defendant is therefore entitled to summary judgment on the substantive due process claim.

### CONCLUSION

There are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment is granted.

SO ORDERED.

DATED: April 8, 1999.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE